**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 22 CR 466 |
| Plaintiff, | ) | |
| | ) | U.S. Magistrate Judge Gabriel A. Fuentes |
| v. | ) | |
| | ) | |
| ANDRES FELIPE VALDEZ-HURTADO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On Monday, September 26, 2022, the Court ordered Defendant Andres Felipe Valdez-Hurtado ("Defendant") released from the custody of the U.S. Marshals Service ("USMS") forthwith after the Court was advised that USMS was still holding Defendant in custody despite the Court having ordered him released on bond on September 23. 9/26/22 Order (D.E. 6); September 23 Order Setting Conditions of Release ("Release Order"; D.E. 7). The government represented at a September 26 telephonic status hearing on release that Defendant had remained in USMS custody at least partly because the U.S. Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), had lodged a detainer requesting USMS to continue to hold him. 9/26/22 Tr. (D.E. 16) at 3. In this Memorandum Opinion and Order, the Court sets forth the legal analysis behind its September 26 order that Defendant be released from USMS custody forthwith, notwithstanding the ICE detainer request.

## BACKGROUND

This matter came before the magistrate judge on criminal duty for initial appearance without unnecessary delay after Defendant's September 20, 2022, arrest under a complaint charging him with smuggling goods, and specifically firearm parts, from the United States to

Colombia in violation of 18 U.S.C. § 554. Complaint (D.E. 1); 9/21/22 Order (D.E. 9); LCR 5.1. The magistrate judge had jurisdiction over the proceedings held per the Bail Reform Act, 18 U.S.C. § 3142 *et seq.*, concerning Defendant's pretrial detention or release. 28 U.S.C. § 636(a)(2).

The relevant timeline of events leading up to the Court's order for forthwith release is as follows: After Defendant's arrest on September 20, ICE sent its detainer request to USMS by email at 3:56 p.m. on September 21. Government's Response to the Court's September 26 Order ("Gov't Resp."; D.E. 14) at 2. The ICE detainer request, on DHS Form I-247A, was dated September 21, 2022, was signed by an immigration officer, and stated that DHS had found probable cause to believe that Defendant is a removable alien.[1] The Court held an initial appearance on September 21. 9/21/22 Order. At the initial appearance, the government orally moved for detention, and the Court found that a detention hearing should be held under the Bail Reform Act ("BRA") and specifically 18 U.S.C. § 3142(f)(2)(A). *Id.* The Court held the detention hearing under Section 3142(e) on Friday, September 23, and denied the government's detention motion, finding that the government had not met its respective burdens to show that no release condition or set of conditions could reasonably assure Defendant's appearance in court as required and the safety of the community or any other person. 9/23/22 Order (D.E. 3). The Court admonished Defendant and his wife, as his third-party custodian, as to the release conditions, which included home detention with location monitoring as well as the third-party custodianship.

---

[1] In response to the Court's September 26 order, the government supplied the Court with Defendant's ICE detainer, which was dated September 21 and emailed to USMS at 3:56 p.m., and ICE's subsequent arrest warrant dated September 26. The Court's statements about the content of the detainer and the warrant are based on the Court's review of those documents and represent findings of the Court. The Court did not make the detainer and warrant themselves a part of the formal record in this case, as they contain DHS officials' identifiers and some phone numbers. The Court's findings as to the content are not disputed and are sufficient for purposes of today's order.

*Id.*; Release Order. The Court ordered that Defendant be "released after processing." 9/23/22 Order.

The detention hearing concluded at about 2:40 p.m. on September 23. Gov't Resp. at 2. At no time during the detention hearing did the government communicate to the Court that an ICE detainer existed as to Defendant, had been transmitted to the USMS, or might have any impact on Defendant's release after processing. The Court learned of the ICE detainer request for the first time shortly after the detention hearing, when a USMS deputy courteously informed the Court and defense counsel, off the record, of the detainer request's existence. Unbeknownst to the Court, at 2:44 p.m. that day (minutes after the detention hearing), a USMS official emailed ICE, stating that Defendant was "getting bond" and asking if ICE had a "pickup time" for Defendant. Gov't Resp. at 2-3. Sometime that same afternoon, the prosecutor in this matter called ICE, and specifically the ICE attorney "who serves as a point of contact for detainer matters," to inform the agency of "the Court's decision on release." *Id.* at 3. The prosecutor "requested [of ICE] that the detainer be lifted, or, if that was not possible, for the defendant to remain in the country to ensure prosecution on the instant case." *Id.* At 3:18 p.m. on September 23, court staff transmitted the Release Order to the USMS by email. *Id.*; 9/26/22 Tr. at 3. Although the Court by then was aware of the ICE detainer request, thanks to the informal disclosure made by USMS, the Court still was unaware of the government's position that the ICE detainer request would operate to block Defendant's release until the detainer could be lifted, or that Defendant would not be released until the detainer was lifted. Defendant spent the night of September 23 and the weekend of September 24 and 25 at the Metropolitan Correctional Center in the custody of the USMS. Gov't Resp. at 4.

At 8 a.m. on Monday, September 26, the Court contacted the USMS lockup at the Everett M. Dirksen U.S. Courthouse to inquire whether Defendant had been released. A USMS official

replied that Defendant had not been released. As the government later disclosed, USMS emailed ICE less than 20 minutes later, at 8:17 a.m., asking "[d]o you have an idea for pickup?" and an ICE deportation officer responded by email at 8:31 a.m., stating that another deportation officer would respond "to set up a pickup time" and providing that other ICE officer's telephone number. *Id.* at 3. Court staff, meanwhile, contacted counsel to schedule a telephonic status hearing on Defendant's release, and the Court held that hearing at 11 a.m. on September 26. 9/26/22 Tr. At the hearing, the prosecutor stated that the government had continued to hold Defendant at least "in part" because of the ICE detainer, which rendered Defendant's release "unlawful[]," the government said. *Id.* at 3-4. The prosecutor added that the government was seeking to lift the detainer request "so that Mr. Hurtado could be released pursuant to this Court's order with regard to his … pretrial supervision with location monitoring." *Id.* Asked if the government objected to an order commanding forthwith release of Defendant, the government stated that it did not object but added: "I think that everyone needs this time to follow procedure in terms of not, you know, unlawfully disregarding a detainer that had been lodged." *Id.* at 4. The Court expressed that "in the interest of judicial restraint," the Court did not wish to enter an order for forthwith release if the Court "really doesn't need to order the Marshals Service to do something," given that the government had represented that "[the] detainer is being lifted so that he will be released." *Id.* at 4-5.

The government then candidly stated that as of earlier on the morning of September 26, "the detainer still had not been lifted this morning but my understanding … is that it was in the process of being lifted so I just wanted to make sure that … your Honor is aware that I don't actually know that it has been lifted as of this moment." *Id.* at 5. The Court became concerned about just how much longer Defendant might be held as a result of the ICE detainer request while

it continued to be in the process of being "lifted," and the Court asked the prosecutor when the detainer would be lifted, with ICE being "a very busy agency." *Id.* at 6. The prosecutor candidly responded that she did not know how long the process would take, and that although her impression was that "it was not going to be a long process in terms of today," she had "made a lot of assumptions there and I shouldn't have." *Id.* Before concluding the hearing, the Court added that it "may enter a more directive order." *Id.*

Very shortly after the conclusion of the September 26 hearing, the Court ordered USMS to release Defendant forthwith. 9/26/22 Orders (D.E. 5, 6). The Court also ordered the government to supply the Court with additional information about the ICE detainer request, any immigration warrant, the circumstances of Defendant's detention over the weekend, and the government's legal basis for its position that the ICE detainer operated as a legal bar to implementation of the Release Order. 9/26/22 Order (D.E. 6) at 2-3. The government's response, filed on September 29, stated that (unknown to the Court and the prosecutor at the time of the September 26 telephonic hearing and the Court's order for forthwith release) at 10:34 a.m. on September 26, an ICE deportation officer had notified USMS that ICE had cancelled the detainer on the request of the U.S. Attorney's Office, and sometime later on September 26, Defendant was released from USMS custody. Gov't Resp. at 3-4 and n.3. ICE appears to have issued an immigration warrant (DHS Form I-200) – a document separate from the ICE detainer request – on September 26, as the warrant the government supplied to the Court bears the date of September 26, five days after the date of the ICE detainer request.[2]

The government's contention that it had legal authority for continuing to hold Defendant in USMS custody beyond his ordinary time of release under the Release Order was as follows: (1)

---

[2] *See supra* n.1.

Congress under 8 U.S.C. § 1231 has authorized ICE to arrest and detain persons whom ICE has probable cause to believe are removable non-citizens; and (2) the ICE detainer request itself "provided USMS with legal authority to hold the defendant after the Court issued the bond order." Gov't Resp. at 4. The first of those two propositions is non-controversial but also not responsive to the question of what authority USMS (rather than ICE, as ICE had not yet taken custody of Defendant) had to prolong Defendant's criminal detention, after issuance of the Release Order, on the ground that the ICE detainer request alleged that Defendant is a removable non-citizen. The second of the government's above two propositions is responsive to that latter question, and thus it is the focus of this Memorandum Opinion and Order. As authority for that proposition, the government cited one source: 8 C.F.R. § 287.7(d), a DHS administrative regulation governing the issuance of ICE detainer requests.

## ANALYSIS

The government's reliance on the DHS regulation as authority for prolonged detention of released immigrant criminal defendants is incorrect. The ICE detainer request was not a lawful basis for prolonging Defendant's criminal detention beyond his release under the Release Order. Accordingly, immediately after the September 26 telephonic status hearing, the Court ordered Defendant's release forthwith, for the reasons set forth more fully below.

## I. This Court Had Jurisdiction to Order that Defendant Be Released from USMS Custody Forthwith.

Aside from the magistrate judge's jurisdiction over detention and release matters in criminal cases under 28 U.S.C. § 636(a)(2), the Court's decision to order Defendant's release forthwith comported with Article III's Case or Controversy requirement. The question of what force and effect the USMS should give to the ICE detainer request – and to the detainer's governing DHS regulation, 8 C.F.R. § 287.7(d) – was ripe for federal judicial resolution on the Monday

morning of September 26. Courts determine ripeness as of the date of decision, *Church of Our Lord and Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 677 (7th Cir. 2019), considering the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *T.H.E. Ins. Co. v. Olson*, Nos. 22-1143, 22-1170 & 22-1172, – F.4th – 2022 WL 9854249, at *4 (7th Cir. Oct. 17, 2022). "An issue is more likely to be fit for judicial review if it is purely legal rather than factual." *Id*. The question here was ripe at the time of the Court's decision to order Defendant released forthwith because Defendant "ha[d] experienced (or imminently face[d]) an injury" and the government's "action or inaction caused . . . that injury," *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021), based on a purely legal issue. At the time of the Court's September 26 order for forthwith release, Defendant had remained in USMS custody for at least 67 hours (from 3:30 p.m. on September 23 to 10:30 a.m. on September 26) after the Court had ordered him released, and the government had represented to the Court that: (1) USMS by law could not release Defendant until ICE lifted the detainer at the request of the Department of Justice; and (2) the government could not say how quickly the detainer would be lifted and thus when the Release Order would be carried out. 9/26/22 Tr. at 3-4. Further prolonged detention of a then-unknown duration in the face of the September 23 Release Order represented a sufficient hardship to Defendant to make the question of his continued detention fit for the Court's determination as of September 26.

For the same reasons, the question of whether the Court on September 26 should have ordered forthwith release to give effect to the Release Order also was not moot. The mootness doctrine implements Article III's Case or Controversy requirement by preventing federal courts from resolving questions that cannot affect the rights of the parties before them. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971). A matter is moot if it becomes impossible for a federal

court to provide any effectual relief to the plaintiff. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, – U.S. –, 139 S. Ct. 1652, 1660 (2019). Here, the Court ordered forthwith release at a time when Defendant's prolonged detention had lasted for as long as 67 hours, and its additional duration – as a result of the government's application of Section 287.7(d) as a bar to release under the Release Order – was not known.

## II. The ICE Detainer Request and Its Governing DHS Regulation Did Not Supply a Legal Basis for Defendant's Prolonged Detention After Entry of the Release Order.

The government's sole justification for prolonging Defendant's detention in USMS custody under the ICE detainer request, after this Court had ordered release on bail, fails as a matter of law. The ICE detainer request is no more than a request, and the DHS regulation upon which the government relies does not require USMS or any law enforcement agency to continue to hold a released criminal defendant in jail or agency custody beyond the time when such defendant ordinarily would be released under a BRA release order. To hold otherwise would be to blur the lines between two separate and distinct federal statutes, the BRA and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et. seq.*, and to read ICE detainer requests and the DHS regulation governing them as compelling prolonged criminal pretrial detention when the detainer requests, the DHS regulation, the weight of judicial authority, and even ICE's own positions and statements do not support such a reading.

### A. Federal Immigration Enforcement Is a Civil Matter, Separate from the Criminal Law and the Application of the Bail Reform Act To Persons Charged with Crimes.

Lest there be any confusion, Congress has prescribed that some acts, such as unlawful entry and re-entry into the country, are crimes subject to punishment by the criminal justice system, *see* 8 U.S.C. §§ 1325, 1326, but that enforcement of federal immigration law by removing immigrants from the country is a civil matter, not a criminal one. *Arizona v. United States*, 567 U.S. 387, 396

8

(2012). A removable person's presence in the United States is not a crime. *Id.* at 407, citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Consequently, when the government charged Defendant in a criminal complaint alleging the unlawful smuggling of firearm parts in violation of 18 U.S.C. § 554, he became a criminal defendant, and his immigration status became relevant in the criminal case only because the Court needed to rule on the government's motion for detention, and his status in the country was one factor for the Court's consideration in whether to detain or release Defendant under the BRA. *See* 18 U.S.C. § 3142(g) (setting forth factors for the Court's consideration at a detention hearing, including "the history and characteristics of the person"); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("The Bail Reform Act directs courts to consider a number of factors and make pre-trial detention decisions as to removable aliens on a case-by-case basis.") (internal quotations omitted). At that point, Defendant had not been charged with any immigration-related crime, and nor is he so charged at this writing.

Meanwhile, during the Department of Justice's criminal prosecution of Defendant on the Section 554 charge, DHS remained free to initiate separate civil immigration removal proceedings against Defendant under the INA. The BRA and INA generally do not conflict, as "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions … and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019). In *Vasquez-Benitez*, the district court had released the criminal defendant under the BRA, and after defendant's release from USMS custody, ICE took custody of him. *Id.* at 549. When the defendant appeared in the district court under a writ, and thus was in USMS custody for purposes of the court appearance, the district court barred the USMS from returning the defendant to ICE custody, but the D.C. Circuit vacated that aspect

of the district court's orders, reasoning that the BRA and the INA may co-exist. *Id.* at 550, 553-54.

Vasquez-Benitez and at least seven other federal courts of appeal outside the Seventh Circuit (which has not yet addressed the issue) have indicated that ICE may take custody of a released criminal defendant under the INA's separate framework for detention of a removable immigrant *after* such defendant's release under the BRA or through a "transfer" of custody in which criminal justice agencies release the defendant in the criminal case directly into the waiting arms of ICE. *See United States v. Baltazar-Sebastian*, 990 F.3d 939, 942, 945 (5th Cir. 2021) (noting that ICE "retook" custody of defendant under the INA after the district court released him under the BNA, and that "[f]undamentally, the BRA and INA concern separate grants of Executive authority and govern independent criminal and civil proceedings"); *United States v. Barrera-Landa*, 964 F.3d 912, 916, 922-23 (10th Cir. 2020) (affirming district court's refusal to enjoin ICE from taking custody of criminal defendant after his release by USMS in the criminal case); *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020) (affirming district court's denial of motion to dismiss the criminal indictment, where defendant entered ICE custody and then was charged with criminal immigration violations resulting in his "transfer" back to ICE custody upon his release under the BRA in the criminal case, because the BNA and INA "co-exist" and "regulate different entities and functions"); *United States v. Lett*, 944 F.3d 467, 469, 470, 473 (2d Cir. 2019) (reversing district court's dismissal of criminal indictment of defendant "transferred" to ICE custody for INA removal proceedings after defendant's release under the BRA, and stating that "[t]he BRA and INA thus serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention"); *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[D]etention of a 'criminal defendant pending trial pursuant to the

[Bail Reform Act] and detention of a removable alien pursuant to the [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities'"), quoting *Vasquez-Benitez*, 919 F.3d at 552; *United States v. Soriano Nunez*, 928 F.3d 240, 243, 247 (3d Cir. 2019) (affirming district court's refusal to hold that criminal defendant's release under the BRA, after district court had detained defendant temporarily under 18 U.S.C. § 3142(d), precluded subsequent ICE detention in separate removal proceedings that "can proceed simultaneously" with the criminal case); *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) (reversing district court's order barring ICE from detaining or deporting a criminal defendant who had been released on bail pending sentencing under Section 3143(a) of the BRA, and noting "no statutory conflict" with the INA).

The instant matter presents altogether different circumstances from those in the above cases because the lawfulness of ICE's taking custody of criminal defendants *after* their release is not at issue here. In this case, by contrast, the government contends that the ICE detainer request *required* USMS to prolong Defendant's custody in pretrial criminal detention after the Court had ordered him released under the BRA so that civil immigration removal proceedings under the INA could proceed or be aided. *See N.S. v. Hughes*, 335 F.R.D. 337, 347 (D.D.C. 2020) (distinguishing *Vasquez-Benitez*'s holding that ICE, within its authority under the INA, "can lawfully detain a person who is ordered released under the Bail Reform Act" from whether USMS had "authority to extend custody pursuant to an ICE detainer"), *modified by N.S. v. Dixon*, No. 20-cv-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). The facts in the record also strongly suggest that on September 23 and into the morning of September 26, USMS was treating the ICE detainer request as a bar to release, as it was communicating with ICE to determine what deportation officer would

11

"pick" Defendant "up" and when, and USMS did not appear to undertake any effort to release Defendant until after DHS informed USMS that the detainer had been lifted.  Gov't Resp. at 3-4.

The relationship between the BRA and the INA, as articulated by the eight U.S. courts of appeal that addressed it in the above-cited decisions, militates against the government's position that ICE's detainer request required Defendant to remain in USMS custody.  As the foregoing decisions emphasized, INA removal proceedings and a federal criminal prosecution may indeed proceed simultaneously, but separately.  As the Supreme Court made clear in *Arizona,* federal immigration removal proceedings under the INA are civil, and not criminal.  The system Congress created under the BRA and INA is not a single, over-arching, coordinated federal enforcement mechanism.  Prosecution under federal criminal laws is not wholly integrated with federal civil immigration enforcement such that BRA release from custody in a criminal case is subordinated to ICE detainer requests to help civil enforcement of federal immigration law, or vice versa. Instead, the two statutes separate civil immigration enforcement from criminal prosecution, and the BRA's provisions direct Courts when criminal defendants must be released and when they must be detained.

Criminal law enforcement officers and civil immigration authorities may indeed communicate with each other, and their sharing of information even has been encouraged. *Arizona*, 567 U.S. at 412-13.  But the Supreme Court has emphasized that the interaction between the civil immigration enforcement mechanism and the enforcement activities of other agencies toward persons suspected to be without lawful status must be limited to "the system Congress created."  *See id.* at 408 (striking down as unconstitutional a portion of an Arizona law authorizing state officers to make immigration arrests based solely on the state officers' determination that the arrestees should be detained as removable).  Even as the INA contemplates or encourages law

enforcement agencies to cooperate with ICE's immigration enforcement activities, such cooperation "does not embrace detention of a person based solely on either a removal order or an ICE detainer" because that form of detention "exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created.'" *Lopez-Aguilar v. Marion County Sheriff's Dept.*, 296 F. Supp. 3d 959, 973-74 (S.D. Ind. 2017), quoting *Arizona*, 567 U.S. at 408.

Against the foregoing backdrop of the system Congress created in enacting the BRA and INA, neither the ICE detainer request nor Section 287.7(d) compelled USMS to disregard the Release Order, as explained more fully below.

**B.  The ICE Detainer Request and Its Governing DHS Regulation Did Not Require or Permit USMS To Prolong Defendant's Detention Beyond the Time of His Release Under the BRA.**

In light of the relationship between the BRA and the INA, the Court determined that contrary to the government's position, neither ICE detainer requests nor 8 C.F.R. § 287.7(d), a DHS regulation promulgated under the statutory authority of the INA, legally required or even permitted the USMS to detain Defendant beyond the time of release compelled by the Court's September 23 Release Order.  In the absence of any legal bar to USMS's compliance with the Release Order, USMS was not permitted to put the Court's Release Order on hold.  Consequently, the Court ordered Defendant's forthwith release on September 26.

**1.  The ICE Detainer Request Was a Request, and Not a Legal Mandate Requiring the USMS To Continue To Hold Defendant After the Court Ordered Him Released Under the BRA.**

The Court first dispenses with the government's sole argument for the lawfulness of USMS's continued detention of Defendant beyond the Court's September 23 Release Order:  that the language of 8 C.F.R. § 287.7(d) – that other agencies "shall" abide by detainer requests –

requires criminal justice authorities such as the USMS to abide by ICE detainer requests despite court orders compelling the release of the person subject to the detainer request.  Gov't Resp. at 4-5.  The Court rejects this argument for multiple reasons, as explained below.

### a. The Language of the Detainer Request Itself Indicates It Is Only a Request.

Several provisions in the ICE detainer request in this matter, on DHS Form I-247A, show why the government's reading of the DHS regulation is wrong.  The ICE detainer directed at Defendant and addressed to USMS in this matter stated, in relevant part:

> IT IS THEREFORE REQUESTED THAT YOU:
>
> **Notify DHS** as earlier as practicable (at least 48 hours, if possible) before the alien is released from your custody ….  **Maintain custody** of the alien for a period <u>NOT TO EXCEED 48 HOURS</u> beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody ….  This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters ….
>
> NOTICE TO THE DETAINEE
>
> …. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law.  DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions.  **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release ….[3]

The ICE detainer request was not a legal basis upon which to extend Defendant's USMS detention notwithstanding the Release Order because, on its face, the detainer request states that it "should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters."  The government's reading of

---

[3] *See supra* n.1.

the detainer request and its governing regulation would effectively neuter the Court's Release Order, contrary to the plain language of the detainer request, thus "impact[ing]" significantly the criminal justice system's decisions about Defendant's bail and release. *See United States v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1291-92 (D. Utah 2017) ("Given this statement [that the detainer should not affect bail decisions], the Court hardly can rely on the Immigration Detainer as the basis to detain Mr. Lizardi-Maldonado.").

### b. Multiple Federal Court Have Held That ICE Detainer Requests Are Mere Requests.

Numerous federal courts have agreed with this Court's conclusion that the language of detainer requests, and of the governing DHS regulation, shows that detainer requests are requests and not legal commands. As the Third Circuit held in *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014), the language of Section 287.7 itself supports this interpretation. In *Galarza*, the plaintiff filed a civil rights action under 42 U.S.C. § 1983 against Lehigh County, Pennsylvania, and various local and federal defendants, after the plaintiff posted bail with local officials but was held further because of an ICE detainer request. *Id.* at 636-37. The Third Circuit reversed the district court's dismissal of plaintiff's Fourth Amendment claims against Lehigh County, repudiating the county's argument that the word "shall" in the DHS regulation required the county to hold criminal defendants beyond their release times in deference to ICE detainer requests. *Id.* at 640-42 (collecting cases referring to ICE detainers under the DHS regulation as "requests"). *Galarza* looked to the language of the DHS regulation itself, which provides as follows:

> (a) Detainers in general. Detainers are issued pursuant to section 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. *A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presenting in the custody of that agency*, for the purpose of arresting and removing the alien. *The detainer is a request* that such agency advise the Department, prior to release of the

alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

….

(d) Temporary detention *at Department request.* Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency *shall* maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(a), (d) (emphasis added). *Galarza* held that the word "shall" in subsection (d) of the regulation cannot be read in isolation and without reference to subsection (a), which "generally defines detainers as requests." *Galarza*, 745 F.3d at 640. *See also N.S.*, 335 F.R.D. at 347 (relying on subsection (a) of 8 C.F.R. § 287.7 to find that ICE detainers issued under the regulation are requests and citing to federal judicial decisions also treating them as requests); *Lucatero v. Haynes*, 14-cv-255-FDW, 2014 WL 6387560, at *2 (W.D.N.C. Nov. 14, 2014) ("As the regulation itself explains, a Form I–247 detainer is merely a request, not a directive, for law enforcement agencies to inform [DHS] of a pending release date for the person for whom a detainer has been issued."); *Miranda–Olivares v. Clackamas Cnty.*, 12-cv-2317-ST, 2014 WL 1414305, at *8 (D. Or. Apr. 11, 2014) ("[T]his court concludes that 8 C.F.R. § 287.7 does not require [law enforcement agencies] to detain suspected aliens upon receipt of a Form I–247 from ICE ….").

Federal courts within the Seventh Circuit also have relied on *Galarza* in finding that ICE detainers are mere requests and not compulsory commands to criminal law enforcement agencies. In denying local law enforcement officials' motion to dismiss an immigrant plaintiff's wrongful detention claims where the officials argued that an ICE detainer required them to prolong the plaintiff's custody, Judge Dow stated that "[t]he Third Circuit's well-reasoned opinion [in *Galarza*] and the plain language of the detainer itself persuade the Court that the [defendants] were not obligated to detain [the plaintiff] pursuant to the ICE detainer." *Villars v. Kubiatowski*, 45 F.

16

Supp. 3d 791, 802 (N.D. Ill. 2014). *See also Santos v. Curran*, No. 17 C 2761, 2018 WL 888758, at *3 (N.D. Ill. Feb. 14, 2018) (denying county sheriff's motion to dismiss immigrant plaintiff's civil wrongful detention claim where sheriff characterized an ICE detainer as a mandatory command that he hold the plaintiff for ICE after his sister posted bond on plaintiff's state criminal charge); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1005 n.3 (N.D. Ill. 2016) (stating that an ICE detainer "simply means a request to a local law enforcement agency for information about an inmate's release date"); *Lopez-Aguilar*, 296 F. Supp. 3d at 978 (finding that the INA "does not permit a state to require its law enforcement officers to comply with removal orders, standing alone, or ICE detainers, standing alone").[4]

This Court agrees with *Galarza,* and the federal courts that have cited it, in concluding that ICE detainers are mere requests. The language in Section 287.7(d) must be read in conjunction with the remainder of the regulation, such that the term "shall" does not require criminal law enforcement agencies to hold immigrant criminal defendants without legal status beyond the time of their ordinary release under bail statutes such as the BRA. *See Beeler v. Saul*, 977 F.3d 577, 585 (7th Cir. 2020) (courts "'interpret statutes as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts in an harmonious whole'"), quoting *Owner-Operator Indep. Drivers Assoc., Inc. v. U.S. Dep't of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016). The Seventh Circuit has called this approach "the 'whole text' canon of statutory interpretation." *Beeler*, 977 F.3d at 585, citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). Looking at the entire text of the DHS regulation at Section 287.7, including subparagraph

---

[4] *In United States v. Orona-Ibarra*, 831 F.3d 867 (7th Cir. 2016), Judge Easterbrook dissented from the majority's holding concerning venue for an illegal re-entry prosecution and added, in a comment that did not conflict with the majority's holding, that per 8 C.F.R. § 287.7(a), "federal regulations *define* immigration detainers as requests rather than commands." *Id*. at 878, emphasis in original (Easterbrook, J., dissenting), citing *Galarza* as "so holding."

(a) as well as (d), within the respective structures of the INA and the BRA, compels our conclusion that subparagraph (d)'s use of the word "shall" does not command USMS to obey ICE detainers' requests to extend USMS custody of criminal defendants released under the BRA.

### c. Construction of ICE Detainer Requests As Legal Commands for Prolonged Detention of Released Criminal Defendants Is Not the System Congress Created Under the BRA and INA, and Would Rewrite the BRA.

Interpreting "shall" in the DHS regulation as a mandatory direction to USMS to hold immigration defendants beyond their release under the BRA would compel a result wholly contrary to the BRA's procedures for release or detention of criminal defendants, and contrary to the separation Congress created between civil immigration enforcement and detention or release in criminal matters. As explained in Part II(A) above, Congress wrote the BRA and the INA to achieve separate objectives, and the INA did not authorize federal criminal law enforcement agencies to place immigrant defendants in civil immigration detention. *See also Villars*, 45 F. Supp. 3d at 807 ("Congress did not authorize DHS to command the detention of aliens."). In *N.S.*, Judge Lamberth reached the same conclusion:

> Furthermore, the INA and its regulations make clear that only trained, certified immigration officers have the authority to make civil immigration arrests. *See* 8 U.S.C. § 1357(a) (giving this power to "officer[s] or employee[s] of the Service authorized under regulations prescribed by the Attorney General," with "the Service" referring to ICE); 8 C.F.R. § 287.7(b). The USMS certainly does not meet this qualification, and nothing in the INA suggests that Congress gave agencies the authority to delegate their power to make civil immigration arrests. This further undermines the notion that an ICE detainer constitutes a grant of authority for the USMS to make a civil immigration arrest. Congress has specifically given this authority only to trained and certified immigration officers, and that limited grant of authority must be respected …. [A]n ICE detainer *alone* does not provide an independent justification for either a new civil immigration arrest or for an extension of custody. As explained above, the officers in this case needed a new justification to keep N.S. under arrest after he was ordered released on his own recognizance. Defendant would like the Court to believe that the question before it is whether the USMS has the power to notify ICE or transfer a prisoner to ICE when the USMS has *already* properly seized the prisoner, but plaintiff does not contest

18

that issue. The question that this case actually raises is whether an ICE detainer gives the USMS the power to keep someone under arrest who would otherwise not be in the USMS's custody at all. Based on the relevant statutory language and the nature of ICE detainers, the Court cannot find any basis for saying that the Marshals Service has such broad power. To interpret the law in such a way would be to say that the Marshals Service can civilly arrest anyone, anywhere, simply because they have an "ICE hold." Such broad power does not comport with this Court's understanding of the USMS's traditional functions.

335 F.R.D. at 347-48 & n.6.[5]

Perhaps more concerning is how construing the word "shall" in the DHS regulation as a mandatory command to USMS for prolonged detention of released criminal defendants would effectively rewrite the BRA in a manner Congress did not intend, as evidenced by the BRA's plain language.  In Section 3142(d) of the BRA, Congress set forth "[t]he only provision of the BRA that differentiates between the treatment of aliens and citizens [and non-citizens with status]…." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018).  Section 3142(d) allows "temporary detention" of up to 10 days of persons whom the court finds are not in the country lawfully at the time of the charged offense and who "may flee or pose a danger to any other person or the community."  18 U.S.C. § 3142(d).  Upon such a judicial finding, the BRA provides that the court shall direct the attorney for the government to notify "the appropriate official of [ICE's or DHS's predecessor agency]." *Id.*  Section 3142(d) provides that if the defendant is not taken into custody by ICE or DHS within the BRA's 10-day temporary detention period, the defendant "shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusions proceedings." *Id.*

---

[5] The Court also adopts Judge Lamberth's reasoning that USMS's powers and duties under its enabling statute, 28 U.S.C. § 566, do not include civil immigration detention. *Id.* at 350-51.  "Of course, if Congress wants the USMS to have such power, Congress can enact a statute to that effect." *Id.* at 351.

Here, Defendant was not temporarily detained under Section 3142(d), which was not invoked in this matter. No other provision in the BRA authorizes the USMS or any federal law enforcement agency to apply DHS regulations or ICE detainer requests to treat unauthorized immigrant defendants differently from other criminal defendants during the BRA's release-or-detention calculus. Congress allowed federal courts to treat criminal defendant immigrants without status differently than citizens or immigrants with status *only* to the extent set forth in Section 3142(d). Further, the BRA expressly directs that a criminal defendant not taken into custody by DHS during Section 3142(d)'s 10-day temporary detention period must be treated the same as any other criminal defendant facing detention or release under the BRA and its provision for detention hearings under Section 3142(e). *See also Villatoro-Ventura*, 330 F. Supp. 3d at 1124 (stating that where "the temporary detention provisions of § 3142(d) do not apply[,] … pretrial release must be resolved pursuant to § 3142(e)"); *United States v. Reyes-Arguello*, 426 F. Supp. 3d 408, 409 (E.D. Ky. 2019) (citing Section 3142(d) and stating that "[n]owhere in the BRA does it state that a defendant with an ICE detainer is not entitled to a [detention] hearing."). Congress's express direction in the BRA for the treatment of immigrant criminal defendants without status confirms that the DHS regulation's use of the word "shall" does not control this Court's interpretation of the BRA. Any construction that compels USMS to disregard the Release Order issued by this Court under the BRA would conflict with the intent of Congress in creating separate procedures under the BRA and the INA.

Courts rightfully have resisted efforts to elevate ICE detainer requests to *de facto* exceptions to the BRA without support in the BRA for such exceptions. *See id.* at 410 ("neither the INA nor the BRA precludes the Court from holding a detention hearing for a defendant with an ICE detainer"); *United States v. Valadez-Lara*, No. 3:14 CR 204, 2015 WL 1456530, at *5

(N.D. Ohio Mar. 30, 2015) ("This Court refuses to acknowledge an automatic exception to the BRA and abandon the individualized assessment without explicit guidance from Congress"), *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) (rejecting government's argument for presumptive detention of defendants subject to ICE detainers and stating that accepting such an argument would allow ICE detainers to overrule "Congress's carefully crafted detention plan" under the BRA); and *United States v. Montoya-Vasquez*, No. 4:08 CR 3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (rejecting argument that defendants subject to ICE detainers are categorically subject to detention, noting Section 3142(d)'s provision for temporary detention of defendants without immigration status and stating that "[i]f Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but it did not").

In ordering forthwith release of Defendant in this case, the Court declined the government's invitation to rewrite the BRA by construing the DHS regulation (Section 287.7(d)) as a trump card overriding the BRA's provisions for release of a criminal defendant when the government, as here, does not meet its respective burdens necessary for detention under Section 3142(e).

> **d. ICE Has Indicated Publicly and in Recent Representations to a Federal Court That It Interprets ICE Detainers As Mere Requests, And Many Local Governmental Entities Also Interpret ICE Detainers As Mere Requests.**

ICE and the government recently took the position in other federal litigation that ICE detainers are in fact mere requests and not compulsory legal commands:

> Detainers are requests by the respondent that the county or state facility with custody of a non-citizen notify the respondent prior to the non-citizen's release, or continue to detain the noncitizen, at state expense, for 48 hours after his scheduled release time to allow the respondent to detain the non-citizen. (Exhibit 1, ¶ 14). Because detainers are merely requests (*See* 8 C.F.R. § 287.7), they are not honored in every instance. For example, each facility where the petitioner might be held in state custody may honor or may disregard the detainer.

*Cuesta v. U.S. Immigration and Customs Enforcement*, No. 21-cv-695 (E.D. Wis. Jan. 28, 2022) ([Government's] Memorandum in Support of Respondent's Motion to Dismiss the Amended Petition for Writ of Habeas Corpus (D.E. 19) at 4), citing *id.*, Exh. 1 (Declaration of Deportation Officer Thomas Moore; D.E. 19-1) ¶ 14. Further, at this writing, ICE's public website describes ICE detainers as requests, even as applied to the continued detention of criminal defendants whom ICE envisions taking into custody upon their release from another law enforcement agency's custody:

> The detainer *asks* the other law enforcement agency to notify ICE before a removable individual is released from custody and *to maintain custody* of the non-citizen for a brief period of time so that ICE can take custody of that person in a safe and secure setting *upon release* from that agency's custody …. As noted above, the detainer serves as a both a request for advance notification of release and *a request to hold the subjec*t for a short period of time, enabling ICE to take custody.

U.S. Immig. & Customs Enf't, "Detainers 101" (ice.gov/features/detainers) (emphasis added) (Oct. 31, 2022) ("Detainers 101").

Moreover, to a significant degree, state and local governmental entities treat ICE detainers as mere requests as well and do not see themselves as compelled to comply with the detainer requests by prolonging the detention of criminal defendants otherwise released in their criminal cases. *See* 5 ILCS 805/10 (defining, in Illinois TRUST Act, immigration detainers as "request[s] to a State or local law enforcement agency to provide notice of release or maintain custody of an individual based on an alleged violation of a civil immigration law, including detainers issued under … 287.7 … of Title 8 of the Code of Federal Regulations."); Chi., Ill. Mun. Code § 2-173-020(a)(1)(C) (2021) (barring Chicago law enforcement officials from "continu[ing] to detain a person … based upon an immigration detainer"); Cook Cnty., Ill., Code of Ordinances § 46-37

(2011) ("The Sheriff of Cook County shall decline ICE detainer requests" absent a written agreement with federal authorities to reimburse the county's costs).

The foregoing stances by ICE, the government, and various state and local entities further debunk the idea that ICE detainers are anything more than requests, notwithstanding the DHS regulation's use of the word "shall."

> **e. The ICE Detainer Request and Procedure Here Presented Several Irregularities that Suggest Practical Reasons Not To Construe the DHS Regulation's Use of "Shall" As Compulsory Upon USMS in This Case.**

Construing the ICE detainer request as commanding prolonged detention of Defendant for immigration purposes creates some significant practical problems arising from several irregularities in this particular case. This Court cannot blind itself to the context or the practical consequences of the government's preferred compulsory construction of the word "shall."

> That the legislature may have used the word "shall" or "must," rather than "may," in directing the discharge of a specified duty does not require that the statute be construed as mandatory rather than directory. A variety of factors should be considered in determining the effect to be given the statute, including whether a mandatory construction would yield harsh or absurd results.

*Bartholomew v. United States*, 740 F.2d 526, 531 (7th Cir. 1984).

First, the government's interpretation of Section 287.7(d) as mandatory in this case runs headlong into *Moreno v. Napolitano*, in which Judge Lee granted summary judgment to a class of plaintiffs on their statutory claim that ICE had exceeded its authority under the INA by subjecting plaintiffs to ICE detainers unsupported by immigration warrants. 213 F. Supp. 3d at 1008-09. This problem – the absence of a separate immigration warrant accompanying the ICE detainer – also manifested itself in this case, even though ICE (specifically citing *Moreno*) revised its internal policies in April 2017 to require that such warrants accompany ICE detainer requests. *See* ICE Policy No. 10074.2, Issuance of Immigration Detainers by ICE Immigration Officials § 2.4 & n.2

(eff. Apr. 2, 2017), filed publicly in *City of South Miami v. DeSantis*, No. 19-cv-22927-BB, Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, Exh. A-2 (S.D. Fla. Aug. 9, 2019) (D.E. 19-1 at 16). In this case, the I-200 immigration arrest warrant that ICE directed at Defendant was dated September 26, 2022,[6] five days after the date of the ICE detainer request. These circumstances suggest that the ICE detainer in this case did not comply with *Moreno* or the 2017 ICE policy revision, meaning that and the INA did not authorize Defendant to be in civil immigration custody before at least September 26, and that civil immigration detention of him, had it occurred in that time frame, may have been out of policy. In this context, interpreting the word "shall" in Section 287.7(d) as mandating that USMS prolong custody of released criminal defendants subject to detainer requests would create the practical problem of compelling USMS to perform a potentially unlawful act that was not authorized in ICE policy or even by the INA.[7]

In a second irregularity, neither the immigration warrant (Form I-200) nor the ICE detainer request directed at Defendant in this case appear to have been served on Defendant, in violation of

---

[6] *See supra* n.1. The government did not supply the Court with any ICE determination that Defendant was likely to escape before an immigration warrant could be obtained; the Court's 9/26/22 Order (D.E. 6 at 2) had requested such a determination, to the extent that it existed. The Court is presuming therefore that ICE made no such determination.

[7] The Court recognizes ICE's concerns that detainer requests allow ICE to "take custody of that person [released on bail in a criminal case but subject to an ICE detainer] in a safe and secure setting upon release from that agency's custody. When law enforcement agencies fail to honor immigration detainers and release serious criminal offenders onto the streets, it undermines ICE's ability to protect public safety and carry out its mission." *See* Detainers 101. Of course, Congress in the BRA directed federal courts to consider community safety in granting or denying release in the first instance to criminal defendants at the detention hearing. 18 U.S.C. § 3142(e). Congress further directed courts to consider the "nature and circumstances" of the charged crime, the weight of the evidence against the person, the person's "history and characteristics" including any criminal history, and the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1-4). In other words, Congress in the BRA already directs courts to consider several factors in accounting for public safety. ICE's administrative convenience, in civilly enforcing the INA with respect to defendants who may be removable immigrants, is not one of them.

ICE policy and the detainer request's own terms. The *Moreno* court observed that ICE guidance dating to 1993 called for immigration warrants to be served upon the persons sought to be detained. 213 F. Supp. 3d at 1009. The immigration warrant here contains a space for the immigration officer to certify that the warrant was served upon the "Alien," and Defendant's name is typed into the certification box, but there is no certification that the warrant was ever served on Defendant.[8] Likewise, although the detainer request states that "[t]he alien **must be served with a copy of this form** for the detainer to take effect" (emphasis in original) and contains space for an immigration officer to certify service, that space on the detainer request is blank, indicating that Defendant was not served with the detainer request either.[9] By the ICE detainer request's own terms, then, the detainer request never took effect. And, if Defendant had no notice of the detainer request, he would not have received notice that he should contact USMS "to inquire about [his] release" if DHS or ICE did not take him into custody during the 48-hour period beyond when he "would have been released based on your criminal charges or convictions."[10] Lack of service of the ICE detainer request upon Defendant thus suggests that ICE's process for asking USMS to hold Defendant for no more than 48 hours to allow ICE time to assume civil immigration custody was in violation of ICE's own detainer request protocol.

Third, Defendant's detention in USMS custody after the September 23 detention hearing extended more than 48 hours past communication of the Release Order to USMS, during a period that spanned a Saturday and a Sunday. The DHS regulation, Section 287.7(d), purports to exclude Saturdays, Sundays and holidays from the 48-hour clock, but the detainer request directed at

---

[8] *See supra* n.1.

[9] *Id.*

[10] *Id.*

Defendant and supplied to the Court in this case simply said that the requested additional detention period to allow ICE to assume custody of Defendant was "**<u>NOT TO EXCEED 48 HOURS</u>**" (emphasis in original), with no mention of tolling of that period during weekend days and holidays.[11] In other words, the ICE detainer arguably did not purport even to request a prolonging of Defendant's detention into the morning of September 26, which was 67 hours after the Court sent the Release Order to USMS. Moreover, the government-disclosed USMS-ICE communications indicate that the two agencies were still discussing at that point when ICE might "pick" Defendant "up."[12] The USMS's prolonged detention of Defendant thus contravened the terms of the ICE detainer request, which itself appears to facially conflict with the language of Section 287.7(d).

In context, the foregoing series of irregularities evinces a disappointing level of departure from ICE policies and procedures and established law per *Moreno*. Failure to follow ICE policies or the statutory authorization for civil immigration detention under the INA leaves room for substantive or procedural rights to fall between the cracks. Where a person's custody or detention is concerned, as it was here, it is especially dangerous for courts to blend the two separate statutory mechanisms Congress created under the BRA and the INA by construing "shall" in the DHS regulation as compelling USMS to prolong Defendant's custody beyond the time he would be released in the ordinary course under the BRA and the Release Order. *See Batholomew*, 740 F.2d at 531.

---

[11] *Id.*

[12] The question of when exactly Defendant would have been released ordinarily under the BRA, if not for the position of the government and/or USMS that the ICE detainer commanded continued detention, is undetermined and unknown.

\*\*\*

Finally, the Court would be remiss if it did not note that prolonged criminal detention beyond the time of ordinary BRA release, when done solely for immigration purposes, raises federal constitutional concerns. The Supreme Court said as much in *Arizona*, acknowledging that "[d]etaining individuals solely to verify their immigration status would raise constitutional concerns." 567 U.S. at 413, citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009), and *Illinois v. Cabales*, 543 U.S. 405, 407 (2005). One federal court has described as "incontestable" the proposition that "any arrest under an ICE detainer issued on something less than probable cause violates the Fourth Amendment." *Lopez-Aguilar*, 296 F. Supp. 3d at 976. Other federal decisions have contained hints that civil immigration arrests or detentions, when based only on an ICE detainer request or even an immigration warrant, may not pass Fourth Amendment muster. *See N.S.*, 335 F.R.D. at 346 ("[T]he I-200 form accompanying the detainer is not a true warrant as it is not issued by an independent judicial officer[.]"); *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at \*14 (S.D.N.Y. June 12, 2018) (noting that I-200 immigration warrants "prepared for ICE agents, by ICE agents" without a showing of probable cause or any neutral review of such a showing "raise serious due process and Fourth Amendment questions"). *But see City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 188 (5th Cir. 2018) (vacating district court's injunction against state statute requiring state law enforcement agencies to honor ICE detainer requests and holding that such agencies' detention of persons subject to ICE detainers without probable cause of criminal conduct is not a *per se* Fourth Amendment violation because other courts have upheld statutes allowing seizures of persons without criminal probable cause, such as the mentally ill, incapacitated persons, and juvenile runaways); *Lopez-Lopez v. County of Allegan*, 321 F. Supp. 3d 794, 800 (W.D. Mich. 2018) (following *City of El Cenizo*). But the Court's

findings as to the construction and interpretation of 8 C.F.R. § 287.7 are a sufficient basis for the September 26 order for release of Defendant forthwith, and principles of judicial restraint counsel in favor of leaving the constitutional question for another day. *Moreno*, 213 F. Supp. 3d at 1009, citing *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008), *aff'd*, 558 U.S. 67 (2009). *See also Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) ("It is a well established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.").

### 2. USMS Had No Discretion To Prolong Defendant's Detention for Civil Immigration Purposes in the Face of the BRA Release Order.

One question remains for our consideration today: If the ICE detainer request did not compel USMS to continue to hold Defendant in custody beyond his BRA release, did USMS have the discretion to do so? The Court's answer is no. Unlike the ICE detainer, the Release Order was not a request – it was an order of this Court, which was fully vested with jurisdiction to enter that order. Under the USMS's authorizing statute, the agency's "primary role and mission" was and is, after all, "to obey, execute and enforce all orders of United States District Courts …." 28 U.S.C. § 566(a). The Court issued the 9/26/22 Order for Defendant's forthwith release to ensure that the Court's September 23 Release Order was carried out. The Court is not aware of any authority under which the ICE detainer request gave the USMS any discretion to prolong Defendant's detention, to put the Release Order on hold, or to slow-walk his BRA release.

### CONCLUSION

For the foregoing reasons, based on the record before the Court and all the circumstances, including the government's supplemental response, the Court entered its 9/26/22 Order for Defendant's forthwith release. The Court issues this Memorandum Opinion and Order for the

further purpose of explaining why the Court's order for forthwith release was necessary as a matter of law, as "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED:**     **November 1, 2022**